UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 19-50038 |
| DAVID L. VALDIVIA, | Chapter 13 |
| Debtor. | Judge Thomas J. Tucker |
| _____/ | |
| MARY A. HAUK, | |
| Plaintiff/Counter-Defendant, | |
| v. | Adv. Pro. No. 19-4422 |
| DAVID L. VALDIVIA, | |
| Defendant/Counter-Plaintiff. | |
| _____/ | |

**OPINION AND ORDER REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

This adversary proceeding is before the Court on cross-motions for summary judgment (Docket ## 26, 27, collectively, the "Motions"). The Court held a hearing on the Motions on May 6, 2020, and then took them under advisement. The Court currently is scheduled to hold a hearing on May 27, 2020 at 1:00 p.m., for the purpose of issuing an oral bench opinion regarding the Motions. But the Court has now decided to rule on the Motions in writing, rather than by an oral bench opinion.

In now ruling on the Motions, the Court finds and concludes as follows.

A. This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). With respect to every claim pled in Plaintiff's Complaint (Docket # 1), and every claim pled in Defendant's "Counter-Complaint" (Docket # 4), this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I)

and/or 157(b)(2)(B).

B. In addition, this adversary proceeding falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code §§ 523(a)(2), 523(a)(4), 523(a)(5) and 523(a)(6). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See Allard v. Coenen*, 419 B.R. at 27.

C. In ruling on the Motions in this case, the Court is applying the standards and principles applicable to summary judgment motions, which the Court has discussed in, among prior published opinions, the Court's opinion in the case of *Schubiner v. Zolman* (*In re Schubiner*), 590 B.R. 362, 376-77 (Bankr. E.D. Mich. 2018). The Court incorporates that discussion into this Opinion and Order by reference.

D. The debt owing by Defendant to Plaintiff is based on a consent judgment entered on March 25, 2019 (the "Consent Judgment") by the Third Judicial Circuit Court for the County of Wayne, Michigan (the "State Court"), in the parties' divorce case, *Mary Ann Hauk (fka Valdivia) v. David Lorenzo Valdivia*, Case No. 08-106455-DM (the "Divorce Case"). The Consent Judgment was in favor of Plaintiff and against Defendant in the amount of $300,000.00.[1]

---

[1] A copy of the Consent Judgment appears in the record as Exhibit G to Plaintiff's summary judgment motion (Docket # 27 at pdf p. 100).

E. The Consent Judgment settled a dispute between the parties about how much Defendant still owed to Plaintiff based on the terms of the judgment entitled "Judgment of Divorce" filed May 14, 2010 in the Divorce Case.[2]

F. In this adversary proceeding, Plaintiff contends that Defendant's debt under the Consent Judgment is non-dischargeable, based on each of the following provisions: 11 U.S.C. §§ 523(a)(2), 523(a)(4), 523(a)(6), and 523(a)(5). Defendant disputes this.

G. In the Judgment of Divorce, the State Court found some of the Defendant's debt to Plaintiff to be based on and arise from fraud, conversion, breach of fiduciary duty, bad faith, intentional harm, and/or other misconduct by Defendant. All of this debt (the "Potentially Nondischargeable Debt") was specified and quantified by the State Court in the Judgment of Divorce, as follows:

1. $36,000.00, for Defendant's unlawful conversion of funds from the restaurant business known as Dario's Italian Eatery (the "Restaurant"); as described in the Judgment of Divorce on page 14;

2. $50,000.00, for the other damages (*i.e.*, damages other than for the above conversion), caused by Defendant's mismanagement of the Restaurant business, breaches of fiduciary duty, and deliberate course of misconduct with respect to the Restaurant business, as described in the Judgment of Divorce on pages 14 through 17;

3. $3,000.00 to reimburse Plaintiff for Defendant's share of the arbitrator's fee that Plaintiff paid, as described in the Judgment of Divorce on page 19;

4. $25,259.75 of the attorney fees incurred by Plaintiff in the Divorce Case; as described in the Judgment of Divorce on pages 19 through 21.

H. All of the debt described in paragraph G above — *i.e.*, all of the Potentially Nondischargeable Debt — was paid in full by the Receiver appointed in the Divorce Case, in

---

[2] A copy of the Judgment of Divorce appears in the record as Exhibit B to Plaintiff's summary judgment motion (Docket # 27 at pdf p. 54).

3

19-04422-tjt    Doc 61    Filed 05/22/20    Entered 05/22/20 14:04:08    Page 3 of 12

August 2010, from property of Defendant administered by the Receiver. This is undisputed, and is clearly established by the evidence presented by Defendant. (*See* Ex. 5 to Defendant's summary judgment motion (Docket # 26 at pdf p. 25) (Receiver's IOLTA "Account QuickReport"), check nos. 1629 and 1643 (totaling $25,259.75 for the attorney fees); check no. 1637 ($3,000.00 for arbitrator fee); check no. 1638 ($36,000.00 for the conversion of funds); check no. 1639 ($50,000.00 for the other damages)).[3] And this was also found to be the case by the State Court in the Divorce Case, in an order entered on February 10, 2012, entitled "Order Quantifying Sums Owed, Approving Receiver's Fees and Costs and Discharging the Receiver" (the "February 10, 2012 Order") (Ex. 6-2 to Defendant's summary judgment motion (Docket # 26 at pdf pp. 56-57)). On page 2 of that Order, the State Court itemized the debt still owing by Defendant at that time under the Judgment of Divorce. None of the debt items included any of the components of the Potentially Nondischargeable Debt. And as to that other debt, the Order stated that the "Remaining Sums Owed" totaled $49,362.60, plus "any liability owed on the construction mortgage," which construction mortgage is referred to in the Judgment of Divorce on page 25 (in paragraph H of the list of Receiver's distribution priorities).

I. None of the other debt owed by Defendant under the Judgment of Divorce, and none of Defendant's other obligations under the Judgment of Divorce (collectively, the "Other Debt"),

---

[3] In addition to the evidence just cited, Plaintiff admitted in the State Court that all of these items of debt were paid by the State Court Receiver. One such admission was made in a motion filed by Plaintiff in the Divorce Case on or about January 9, 2018, entitled "Plaintiff's Motion for Judgment of Amounts Owed by Defendant" in paragraphs 1 through 3 on page 2 (*See* Ex. F to Plaintiff's summary judgment motion (Docket # 27 at pdf p. 96)). In that same State Court motion, Plaintiff listed all the items of debt under the Judgment of Divorce that she claimed were then still owing from Defendant, and none of those items were Potentially Nondischargeable Debt. (*See id.* at 2-3, ¶¶ 4-8). And Plaintiff admitted the same thing, in substance, on page 4 of a supplemental brief filed in the State Court on or about March 5, 2018. (*See* Ex. E to Defendant's summary judgment motion (Docket # 27 at pdf p. 93)).

were found by the State Court to be caused by, based on, or arise from, any fraud, conversion, breach of fiduciary duty, bad faith, intentional harm, or other misconduct by Defendant. Nor has Plaintiff presented any evidence or alleged any colorable basis for this Court to make such a finding now about any of the Other Debt.

J. Based on the Judgment of Divorce and the State Court's February 10, 2012 Order, discussed above, Plaintiff is precluded, by the doctrines of res judicata and collateral estoppel, from now claiming that any of the Other Debt was caused by, based on, or arose from, any fraud, conversion, breach of fiduciary duty, bad faith, intentional harm, or other misconduct by Defendant. *See generally Adair v. State of Michigan*, 680 N.W.2d 386, 396 (Mich. 2004) (res judicata); *Lenchner v. Korn* (*In re Korn*), 567 B.R. 280, 297-99 (Bankr. E.D. Mich. 2017) (collateral estoppel).

K. Because all of the Potentially Nondischargeable Debt owing by Defendant to Plaintff was paid in full to Plaintiff in August 2010, it is clear and undisputable that none of Defendant's debt under the $300,000.00 Consent Judgment (which was entered on March 25, 2019) can possibly include any Potentially Nondischargeable Debt.

L. There is no genuine dispute of any material fact, and Defendant is entitled to judgment as a matter of law, that none of the $300,000.00 judgment debt owing by Defendant under the Consent Judgment is a debt caused by, based on, or arising from, any fraud, conversion, breach of fiduciary duty, bad faith, intentional harm, or other misconduct by Defendant.

M. Defendant therefore is entitled to summary judgment on Plaintiff's nondischargeability claims under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6), and,

5

therefore, on Counts I, II, and IV of Plaintiff's Complaint.[4]

N. During the hearing on the Motions, Plaintiff, through his counsel, agreed that the Court should dismiss Count VI of Plaintiff's Complaint. That count seeks relief from the automatic stay, to allow Plaintiff to "seek confirmation in" the State Court in the Divorce Case that Defendant's debt to Plaintiff under the Consent Judgment is a domestic support obligation. (*See* Complaint at ¶ 66). That very same relief was denied by this Court, albeit without prejudice, in the Court's ruling on Plaintiff's motion for relief from stay, made on October 10, 2019 in the main bankruptcy case. (*See* Order at Docket # 39 in Case No. 19-50038). Because Plaintiff now concedes that Count VI should be dismissed, the Court will dismiss that count, with prejudice. The effect of this will be that this Court, rather than the State Court, will decide whether the debt in question is a domestic support obligation.

O. In the Motions, neither Plaintiff nor Defendant has moved for summary judgment on or dismissal of Count V of Plaintiff's Complaint, and at this point, there is no basis on the present record for the Court to grant summary judgment on that count for either party. So that count will remain pending.

P. Of the counts in Plaintiff's Complaint, that leaves only Count III, which alleges that Defendant's debt to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(5), as a "domestic support obligation." And that same issue is the subject of both counts of Defendant's "Counter-Complaint."

---

[4] The elements of Plaintiff's claims of nondischargeability under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6) are set forth and discussed by this Court in *Lenchner v. Korn*, 567 B.R. at 300-05 (§ 523(a)(2)), 310-11 (§ 523(a)(4)), and 313 (§ 523(a)(6)), which the Court incorporates by reference into this Opinion and Order.

Q. In this Court's opinion in *Schubiner*, the Court discussed at length the law governing the determination whether a given debt is a "domestic support obligation" as defined in 11 U.S.C. § 101(14A) and as that phrase is used in 11 U.S.C. § 523(a)(5). *See Schubiner*, 590 B.R. at 392-97. The Court incorporates that discussion in *Schubiner* by reference into this Opinion and Order, and reiterates that discussion as still being an accurate description of the law in the Sixth Circuit, which is binding on this Court.

R. The Court finds that the analysis described in the Sixth Circuit's decision in *Sorah v. Sorah* (*In re Sorah*), 163 F.3d 397 (6th Cir. 1998), which is described in *Schubiner*, 590 B.R. at 392-95, applies to the debt at issue. First, the Court finds that all $300,000.00 of Defendant's debt to Plaintiff under the March 25, 2019 Consent Judgment, all of which, in turn, is debt under the Judgment of Divorce, was labeled as support. Defendant concedes this.[5] This is so because the Judgment of Divorce labeled all such debt as support, and showed the clear intention of the State Court that all such debt was intended for the support of Plaintiff. On page 25 of the Judgment of Divorce, for example, the Judgment stated that the debt owing to Plaintiff was "intended to be for the support of" Plaintiff; that such debt was "intended by the parties and determined by the Court not to be discharged in bankruptcy;" and that "any debt or debt obligation incurred by" Defendant "as a consequence of this Judgment . . . will not be discharged in bankruptcy." (Judgment of Divorce at p. 25). The no-bankruptcy discharge provisions just quoted, standing alone, do not conclusively determine this Court's ruling on dischargeability. But they do, implicitly but very strongly, demonstrate the State Court's intention that Defendant's obligations under the Judgment of Divorce were intended for the support of

---

[5] *See, e.g.*, Br. in Supp. of Def.'s Summ. J. Mot. at 5-6 (Docket # 26 at pdf pp. 16-17)).

Plaintiff. This is because the only way that the debt under the Judgment of Divorce truly could not be discharged in any bankruptcy case (including a Chapter 13 case) is if the debt qualified as a "domestic support obligation," because it was in the nature of support.

S. Under the *Sorah* analysis,[6] in addition to the label and clear indication that the State Court intended the debt to be for Plaintiff's support, there are other traditional indicia of support. The second such indicia listed by *Sorah* exists here, namely that all of the debt in question is for "a direct payment to the former spouse, as opposed to the assumption of a third party debt." Although some of the provisions of the Judgment of Divorce that created the debt in question originally involved, in a sense, Defendant's assumption of third party debt, the Judgment of Divorce made clear that all of these provisions also were "indemnification and hold harmless clauses" (*see* Judgment of Divorce at p. 25, "Anti Bankruptcy Clause"). This clearly meant that Defendant would be obligated to pay Plaintiff directly to the extent Plaintiff was required to pay any debt assumed by Defendant under the Judgment of Divorce. And even more pertinent on this point now is the fact that the Consent Judgment is a $300,000.00 money judgment in favor of Plaintiff and against Defendant. As such, Defendant's remaining debt to Plaintiff under the

---

[6] In *Sorah*, the court stated, in relevant part:

> In determining whether an award is actually support, the bankruptcy court should first consider whether it "quacks" like support. Specifically, the court should look to the traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of a third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

*Sorah*, 163 F.3d at 401.

Judgment of Divorce, as embodied in the Consent Judgment, is now entirely an obligation for Defendant to pay directly to Plaintiff.

T.  It is true that the third *Sorah* factor is not present with respect to the debt in question. That factor is that "payments . . . are contingent upon such events as death, remarriage, or eligibility for Social Security benefits."  But the *Sorah* analysis does not require this factor to be present, if the debt or obligation is labeled as support, and if sufficient other state law indicia of support exist.

U.  Sufficient other indicia of support do exist with respect to the debt at issue.  In addition to the label, such indicia are (1) as described above, the other clear, implicit but strong indications in the Judgment of Divorce that the debt obligations were intended by the State Court for the support of Plaintiff; (2) the direct-payment nature of Defendant's obligations to Plaintiff, as described above; (3) the State Court's adoption of the Arbitrator's finding that Plaintiff "is and has been without sufficient funds to maintain" the Divorce Case litigation (Judgment of Divorce at p. 20); (4) the State Court's discussion of how the line of credit used to operate the Restaurant business "was secured by the home of" Plaintiff only, and not by any property of Defendant (*id.* at pp. 15-16), and that Defendant's obligations to Plaintiff under the Judgment of Divorce included Defendant's 50% liability on that credit line (*id.* at pp. 17-18); and (5) the fact that under Michigan law, relief labeled as "spousal support" need not be awarded to a spouse if, considering all the circumstances, "the estate and effects awarded to" that spouse are sufficient "for the suitable support and maintenance of" that spouse.  *See* Mich. Comp. Laws Ann.

9

§ 552.23(1).[7]

V. Based on the foregoing, the Court concludes that under the appropriate analysis based on *Sorah*, there is no genuine dispute of any material fact, and Plaintiff is entitled to judgment as a matter of law, that all of Defendant's debt to Plaintiff is a support obligation under 11 U.S.C. §§ 101(14A) and 523(a)(5).

W. Under *Sorah*, therefore, Defendant has a burden of demonstrating "that although the obligation is of the type that may not be discharged in bankruptcy, its amount is unreasonable in light of the debtor spouse's financial circumstances." *Schubiner*, 590 B.R. at 394-95 (quoting *Goans v. Goans* (*In re Goans*), 271 B.R. 528, 533 (Bankr. E.D. Mich. 2001) (quoting *Sorah*, 163 F.3d at 401)).

X. More specifically, this means, as the Sixth Circuit stated in *Sorah*, that:

> the only response available to the debtor spouse is to demonstrate that the obligation is unreasonable in light of the debtor's financial circumstances. This is the third prong of the *Calhoun* test. *See* 715 F.2d at 1110. We further note that the bankruptcy court does not sit as a super-divorce court to determine the most reasonable level of support. Rather, it may consider evidence that the obligation is unreasonable and discharge it to the extent that it exceeds what the debtor can reasonably be expected to pay. Section 523 obviously places no limitation upon a state court's ability to award alimony, maintenance, or support (*see Fitzgerald*, 9 F.3d at 521), and the bankruptcy court should not second-guess the state court support award absent evidence that the burden on the debtor spouse is excessive.

*Sorah*, 163 F.3d at 402.

---

[7] This Michigan statute is one reason why the provision on page 2 of the Judgment of Divorce barring "spousal support" to either party is of little consequence in determining whether the debt at issue is "in the nature of . . . support" within the meaning of the Bankruptcy Code definition of "domestic support obligation," 11 U.S.C. § 101(14A)(B).

Y. On the present record, and at this summary judgment stage, the Court cannot yet determine whether or to what extent Defendant can meet his burden described in paragraphs W and X above. A trial on this issue will be required.

Z. It follows that Plaintiff is entitled to *partial* summary judgment with respect to nondischargeability under 11 U.S.C. § 523(a)(5) (Count III of the Complaint), consistent with paragraphs Q through Y above.

For the reasons stated above,

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment (Docket # 27) is granted in part, to the extent of the relief provided in paragraph 4 of this Order below, and otherwise is denied.

2. Defendant's motion for summary judgment (Docket # 26) is granted, to the extent of the relief provided in paragraph 3 of this Order below, and otherwise is denied.

3. Summary judgment is granted in favor of Defendant on Counts I, II, IV, and VI of Plaintiff's Complaint, and all of those Counts are dismissed with prejudice.

4. Partial summary judgment is granted in favor of Plaintiff on Count III of Plaintiff's Complaint, consistent with, and to the extent described in, paragraphs Q through Y above.

5. Count V of Plaintiff's Complaint remains pending, and is unaffected by the Court's rulings on the Motions.

6. The hearing currently scheduled for May 27, 2020 at 1:00 p.m., which was to have been for the purpose of the Court issuing an oral bench opinion on the Motions, is canceled, as no longer necessary.

**Signed on May 22, 2020**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker
United States Bankruptcy Judge**