UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                    Case No. 19-50038

DAVID L. VALDIVIA,                        Chapter 13

            Debtor.                       Judge Thomas J. Tucker
_____/

MARY A. HAUK,

            Plaintiff/Counter-Defendant,

v.                                        Adv. Pro. No. 19-4422

DAVID L. VALDIVIA,

            Defendant/Counter-Plaintiff.
_____/

**TRIAL OPINION**

**I.  Introduction**

        The primary issue in this adversary proceeding is whether the Defendant Chapter 13

debtor's $300,000 judgment debt to his ex-wife is nondischargeable under 11 U.S.C. § 523(a)(5),

as a "domestic support obligation."

        This adversary proceeding came before the Court for a bench trial, held on June 23, 2020.

 With the consent of the parties, the trial was held by a combination of video conference and

telephone.

        The Court has considered all of the evidence and arguments presented by the parties at

trial.  This includes the testimony of the witnesses — namely, Plaintiff Mary Hauk, Defendant

David Valdivia, and Joel Valdivia.  And this includes all of the exhibits that were admitted into

evidence — namely, Plaintiff's Exhibits 1-3 and 13-15.[1]  This Opinion states the Court's findings of fact and conclusions of law.

## II.  Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding, and this is in all respects a core proceeding, for the reasons stated in Paragraphs A and B of the Court's opinion regarding the parties' cross-motions for summary judgment, filed May 22, 2020 (the "Summary Judgment Opinion").[2]

## III.  Discussion

## A. Preliminary matters

First, the Court reiterates and adopts, and incorporates into this Opinion by reference, everything stated in the Court's Summary Judgment Opinion.[3]  And the separate judgment to be entered today will reiterate, adopt, and incorporate the Court's summary judgment rulings, including the rulings that dismissed Counts I, II, IV, and VI of Plaintiff's Complaint with prejudice.

Second, the Court finds as fact, and incorporates into this Opinion by reference, the facts stipulated to by the parties in the Final Pretrial Order filed on June 8, 2020, in Section IV at page 2, labeled "Stipulation of Facts."[4]

---

[1]  In this Opinion, the Court will cite the exhibits using the form "PX-__."  Copies of these exhibits are on file in this adversary proceeding, at Docket # 70.

[2]  "Opinion and Order Regarding Cross-Motions for Summary Judgment" (Docket # 61), which is reported as *Hauk v. Valdivia* (*In re Valdivia*), 615 B.R. 231 (Bankr. E.D. Mich. 2020).

[3]  *Id.*

[4]  Docket # 64.

**B. Count III of Plaintiff's Complaint and the counterclaims in Defendant's "Counter-Complaint"**

Count III of Plaintiff's Complaint was not fully disposed of by the Court's Summary Judgment Opinion. That count alleges that Defendant's $300,000 judgment debt to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(5), as a "domestic support obligation." And that same issue is the subject of both counts of Defendant's "Counter-Complaint."[5] The Court granted partial summary judgment for Plaintiff on Count III, consistent with what the Court stated in Paragraphs Q through Y of its Summary Judgment Opinion.[6]

The Court defined the issue to be tried as follows:

> V. Based on the foregoing, the Court concludes that under the appropriate analysis based on *Sorah* [*v. Sorah* (*In re Sorah*), 163 F.3d 397 (6th Cir. 1998)], there is no genuine dispute of any material fact, and Plaintiff is entitled to judgment as a matter of law, that all of Defendant's debt to Plaintiff is a support obligation under 11 U.S.C. §§ 101(14A) and 523(a)(5).

> W. Under *Sorah*, therefore, Defendant has a burden of demonstrating "that although the obligation is of the type that may not be discharged in bankruptcy, its amount is unreasonable in light of the debtor spouse's financial circumstances." *Schubiner* [*v. Zolman* (*In re Schubiner*)], 590 B.R. [362,] 394-95 [(Bankr. E.D. Mich. 2018)] (quoting *Goans v. Goans* (*In re Goans*), 271 B.R. 528, 533 (Bankr. E.D. Mich. 2001) (quoting *Sorah*, 163 F.3d at 401)).

> X. More specifically, this means, as the Sixth Circuit stated in *Sorah*, that:

>> the only response available to the debtor spouse is to demonstrate that the obligation is unreasonable in light of the debtor's financial circumstances. This is

---

[5] Docket # 4 at pdf pages 10-15.

[6] *See* Summ. J. Op. (Docket # 61) at 11, ¶ Z, and "IT IS ORDERED" ¶ 4.

the third prong of the *Calhoun* test. *See* [*Long v. Calhoun* (*In re Calhoun*),] 715 F.2d [1103,] 1110 [(6th Cir. 1983)]. We further note that the bankruptcy court does not sit as a super-divorce court to determine the most reasonable level of support. Rather, it may consider evidence that the obligation is unreasonable and discharge it to the extent that it exceeds what the debtor can reasonably be expected to pay. Section 523 obviously places no limitation upon a state court's ability to award alimony, maintenance, or support (*see Fitzgerald* [*v. Fitzgerald* (*In re Fitzgerald*)], 9 F.3d [517,] 521 [(6th Cir. 1993)], and the bankruptcy court should not second-guess the state court support award absent evidence that the burden on the debtor spouse is excessive.

*Sorah*, 163 F.3d at 402.

Y. On the present record, and at this summary judgment stage, the Court cannot yet determine whether or to what extent Defendant can meet his burden described in paragraphs W and X above. A trial on this issue will be required.[7]

In deciding this case, the Court is mindful that "'unlike the other nondischargeability provisions under [11 U.S.C.] § 523(a) which are construed narrowly, the nondischargeability provision of § 523(a)(5) is given a broad construction so as to promote the Congressional policy that favors enforcement of obligations for spousal and child support.'" *Andrus v. Ajemian* (*In re Andrus*), 338 B.R. 746, 752 (Bankr. E.D. Mich. 2006) (quoting *Luman v. Luman* (*In re Luman*), 238 B.R. 697, 704 (Bankr. N.D. Ohio 1999)); *see also Norbut v. Norbut* (*In re Norbut*), 387 B.R. 199, 210 (Bankr. S.D. Ohio 2008) (same).

Having conducted the trial, the Court now finds and concludes that Defendant failed to meet his burden of proving, by a preponderance of the evidence, that the judgment debt of

---

[7] *Id.* at 10-11.

$300,000 plus interest that Defendant owes Plaintiff (the "Debt") is to any extent "unreasonable in light of the [Defendant D]ebtor's financial circumstances," within the meaning of the *Sorah* case. Similarly, Defendant failed to meet his burden of proving that the Debt, to any extent, "exceeds what the [Defendant D]ebtor can reasonably be expected to pay," with the meaning of the *Sorah* case.[8]

Defendant failed to prove that he has no present or foreseeable future ability to pay *any* of the Debt. More than this, Defendant also failed to prove that he lacks the present or foreseeable future ability to pay *all* of the Debt.

These findings are supported by the totality of the circumstances, including the combination of the following things.

• Although the Debt is evidenced by the $300,000 consent judgment entered in the parties' divorce case by the State Court on March 25, 2019 (PX-3), all of that Debt is debt that originally arose from and under the Judgment of Divorce that was entered on May 14, 2010 (PX-2). The Debt currently owed, therefore, is essentially debt remaining from a judgment entered against Defendant over 10 years ago.

• Under these circumstances, it is appropriate to consider not only Defendant's present and likely future financial circumstances, but also Defendant's financial circumstances at the time the 2010 Judgment of Divorce was entered, and during the intervening 10 years since then. *See, e.g.*, *Luman v. Luman* (*In re Luman*), 238 B.R. 697, 710 (Bankr. N.D. Ohio 1999) (emphasis

---

[8] It is clear from the *Sorah* case that Defendant bears the burden of proof on these issues. *See Sorah*, 163 F.3d at 401-02. And Defendant admits that he has this burden of proof. (*E.g.*, Final Pretrial Order (Docket # 64) at 2 (stipulating "[t]hat the burden is now on the Defendant to prove, if he so alleges, that the amount of the [Debt] is unreasonable")).

added) (citations omitted):

> The third step of the *Calhoun* test requires the Court to examine whether the amount of the now determined support provision is so excessive so as to be manifestly unreasonable under the traditional concepts of support. *Calhoun*, 715 F.2d at 1110. . . . This analysis is normally made by inquiring into whether the debt assumption substantially exceeded the debtor spouse's **present and foreseeable ability to pay the support, as viewed from the time the debt was assumed**. . . . In other words, this Court is to ask whether it is feasible that a state court could have ordered the Debtor to pay support payments in the amount of the debt assumption that was actually awarded.

• Defendant failed to present evidence sufficient to meet his burden of proving that, at the time of the 2010 Judgment of Divorce, and during the years 2010 through the present, he has never had the financial ability to pay Plaintiff any part of the Debt, other than the amounts paid in August 2010 through the State Court-appointed Receiver's liquidation of some of Defendant's assets. It is undisputed that Defendant has never paid any of the debt he owed Plaintiff under the Judgment of Divorce, except through the sums paid by the Receiver in August 2010.

• Defendant testified that he is 57 years old, and he appears to be in good health and physically able to work full time. No evidence to the contrary was presented. Nor did Defendant present any evidence suggesting that he will not be able to work full time for many years to come.

• Defendant testified that he currently works as a Property Agent for a business owned by his father, Joel Valdivia, named Rental Acosta Property Management and Construction Service ("Rental Acosta"). Defendant testified that by agreement with his father, he is paid a salary of $37,000 per year, and the Schedule I filed in Defendant's current Chapter 13 bankruptcy case shows this amount of gross annual pay. (PX-13, Schedule I, line 2).

6

• Defendant testified that he does not work full time in his job for his father's business, and that he does not have any other employment. He testified that he does not know how many hours per week he has worked, that there are no documents that show how many hours per week he works, that the number of hours varies, and that he does not work every day.

• Despite being underemployed in this way — *i.e.*, not working full time — Defendant testified that he is not looking for any other or better employment.

• Defendant testified that he used to have a Michigan builder's license, which expired, and that he is in the process of trying to get that license back.

• In his career, Defendant has had substantial experience, among other things, in managing a restaurant; and in doing concrete construction work.

• Apart from the income from his part-time job for his father's business, Defendant's only other income, according to his testimony and his Schedule I, is rental income of $225.85 per month. (PX-13, Schedule I, line 8h). This is one half of the rent generated by leasing out a single family home in which Defendant owns a one-half interest, located at 2023 Deering, Garden City, Michigan. This real property is discussed further, below.

• Defendant testified that the home where he lives is owned by his girlfriend, and that the rental expense ($600.00 per month) and utility expenses ($280.00 per month) shown on Defendant's Schedule J are calculated as his one-half share of such expenses, which he pays to his girlfriend.

• With the present income that he has disclosed, and his scheduled expenses, Defendant's Schedules I and J show that he has disposable income (income left after paying his monthly living expenses) of $451.68 per month. (PX-13, Schedule J, line 23c ("*monthly net income*"))

7

(italics in original)).

• As confirmed by his Schedules filed in the current Chapter 13 bankruptcy case, Defendant does not have much debt, other than his Debt to Plaintiff. Defendant filed a prior bankruptcy case in this Court, under Chapter 7, on June 3, 2014 (Case No. 14-49569), and received a discharge of all of his debts in that case, except his Debt to Plaintiff. The Chapter 7 Trustee in Defendant's 2014 case did not liquidate or administer any of Defendant's property.

• According to his bankruptcy Schedules, Defendant's debts in his current bankruptcy case, other than the Debt to Plaintiff, consist of no secured debts (PX-13, Schedule D); an unsecured tax debt to the Internal Revenue Service of $1,731.84; an unsecured debt to Defendant's father (discussed below); a debt on a current vehicle lease (discussed below); and other unsecured debts that total $1,704.10. (PX-15, amended Schedule E/F).

• Defendant's Schedule E/F lists an unsecured debt to his father, Joel Valdivia, in the amount of $30,622.08, for "[v]arious [l]oans." Although this Schedule required Defendant to state when the debt was incurred, Defendant did not do so; he left that line blank. (PX-15, amended Schedule E/F at item 4.4). Defendant testified that he borrowed money from his father from time to time to help him pay his living expenses, but that he has not borrowed from his father during the last year to 15 months. Defendant testified that there is no documentation by which he keeps track of how much he owes his father.

• Defendant testified that there is no promissory note evidencing any of his debt to his father, and no evidence of any documentation of the debt was presented at trial. Defendant presented no evidence of any repayment terms, or any other terms, of his loans from his father, and no evidence was presented that the loans bear any interest. There was no evidence presented

8

of any particular date or deadline for Defendant to repay any of his debt to his father.

• According to his Schedules and his testimony at trial, Defendant leases a 2018 Dodge Ram 1500 truck. Under that lease, Defendant pays $325.00 per month to Ally Financial. (*See* PX-13, Schedule J, line 17a; PX-15, amended Schedule E/F, item 4.1).[9] Defendant is current in his monthly lease payments.

• There is no evidence that Defendant filed his current bankruptcy case because of any pressure or collection activity by any of Defendant's creditors, other than Plaintiff. In fact, there is no evidence that Defendant was or is in default on any debt to any of his creditors, other than Plaintiff.

• Defendant's Schedules show that he owns a one-half interest in the real property located at 2023 Deering, Garden City, Michigan, which is the single-family home from which Defendant obtains rental income, discussed above. Defendant testified that the other one-half interest in this property is owned by Defendant's father. As confirmed by Defendant's Schedule D and Defendant's testimony, this real property is not encumbered by any mortgage or other liens. (PX-13, Schedule D). Defendant has valued this real property at $50,000.00, with his one-half share being worth $25,000.00. (PX-15, amended Schedule A/B, item 1.1). But there is conflicting evidence regarding the value of this property, and there is some evidence indicating that the value of this property is substantially more than $50,000.00.

On the one hand, Defendant testified that he believes the property is worth only $50,000.00, based on the current State Equalized Value ("SEV") for the property, and because,

---

[9] Defendant listed an unsecured debt to Ally Financial in his amended Schedule E/F, in the amount of $3,380.00. He confirmed in his trial testimony that this debt is for the lease of the truck.

according to Defendant, the interior of the Deering property, though occupied, is not in good condition.

On the other hand, Defendant admitted that he paid roughly $79,000 for this property when he purchased it in the late 1990s. Defendant further testified that he has made improvements to the property, including new siding on the outside and new carpeting on the inside. Plaintiff testified that she is a licensed real estate agent, is familiar with the area housing market, and that she reviewed data regarding sales of properties comparable to, and in the area of, Defendant's Deering property. And she testified that sales of comparable properties ranged from $95,000.00 to $160,000.00, with a median sale price of $125,000.00.

Having considered all the evidence presented that is relevant to this issue, the Court finds that Defendant did not prove, by a preponderance of the evidence, that the Deering property is worth only $50,000.00, rather than substantially more than that amount.

• Defendant's Schedules show that he owns a one-half interest in a 2008 Ford Taurus vehicle, with Defendant's share of the value of the vehicle being $2,000.00. The other one-half interest in this vehicle is owned by Defendant's father. The vehicle is not encumbered by any liens. (PX-15, amended Schedule A/B, item 3.1; PX-13, Schedule D).

• Defendant's Schedules disclose various other items of personal property, other than the Ford Taurus vehicle, and Defendant claims that this other property has a total value of $2,602.38. (PX-15, amended Schedule A/B, items 4-62).

• At trial, Defendant presented only limited information about his father's business, Rental Acosta. There was no evidence presented to show whether Rental Acosta is a separate entity, such as a corporation or limited liability company, or whether, instead, it is a sole

10

proprietorship operated by Defendant's father under an assumed name. In any event, Defendant testified that Rental Acosta is in the business of owning and renting residential real estate, and that it owns 8 or 9 rental properties, which it typically leases for two-year terms. Rental Acosta has no physical office location, and rental payments are sent to a post office box. Rental Acosta also does some construction work, on its own properties. It also has done small construction projects on properties owned by others.

• Defendant presented no information about the financial condition of the Rental Acosta business, or what the value of that business is. For example, no information was presented of what the value is of the 8 or 9 real properties owned by Rental Acosta, or whether any such properties are encumbered by any mortgage or liens; or what is the equity value of such properties.

• There is a further consideration about Rental Acosta that Defendant did not testify about, or present any evidence about, that is relevant to Defendant's ability in the future to pay the Debt owing to Plaintiff. That is whether Defendant will, in the foreseeable future, inherit from his father, or otherwise succeed to, ownership of the Rental Acosta business and properties, and if that happens, what it likely will be worth financially to Defendant.

• Based on what evidence was presented, the prospect of Defendant inheriting or succeeding to ownership of the Rental Acosta business is sufficiently foreseeable that Defendant had an obligation to address it with evidence. This is especially true given that Defendant bears the burden of proof on the issue of his present and future ability to pay his Debt to Plaintiff. Defendant is Rental Acosta's only employee, and is the only person in charge of the business, other than his father, who Defendant described as the "owner" and "investor" of the business.

11

(Accounting and bookkeeping services are provided by an outside service.)  Defendant testified that his father, Joel Valdivia, is "retired."  Defendant's father is 86 years old, and according to Defendant, his father is in "average to poor health."[10]  Defendant testified that he has had a very close relationship with his father his whole life.  Defendant has one living sibling, who is a retired school principal, and who has no dealings with the Rental Acosta business.

• Given these facts, it was incumbent on Defendant, as the party with the burden of proof, to present further evidence about whether Defendant likely will, in the foreseeable future, inherit from his father, or otherwise succeed to, ownership of the Rental Acosta business and properties, and if that happens, what it likely will be worth financially to Defendant.  These issues have a significant bearing on the extent to which Defendant will, in the future, have the ability to pay his Debt to Plaintiff.  But Defendant failed to address these issues with any evidence.

• Plaintiff testified that in the past, Defendant has done cement construction work, on a cash basis.  Defendant did not deny or explain this testimony by Plaintiff.  Defendant had the chance to do so, because after Plaintiff gave her testimony, Defendant testified again, in his rebuttal case.  But he did not address this subject at all.

• Plaintiff's unrebutted testimony, which the Court finds credible, especially since Defendant did not dispute it, included the following.  Defendant has done cement work since he was a boy.  He did cement work at his Deering property in Garden City, Michigan, and at the restaurant that Plaintiff and Defendant built when they were married, which was known as

---

[10]  Joel Valdivia testified at trial, very briefly.  Although Joel Valdivia testified that he "pays the bills" of the Rental Acosta business, he could not say how much he earns from the business, and he misstated the amount of his son's salary, as roughly $30,100 per year.  (It is actually $37,000 per year).  And Joel Valdivia could not remember when he last gave his son a raise.  (Defendant David Valdivia testified it was 14-15 months ago that his father agreed to raise his salary, to $37,000 per year.)

Dario's Italian Eatery, doing business as D&M Valdivia Restaurants, Inc. (referred to below as the "Restaurant"). Defendant has substantial experience doing cement construction work. When the parties were married, Defendant did construction jobs, mostly with cement, for cash. And Plaintiff is not aware of any reason why Defendant could not have continued to do such jobs over the years, and into the present.

• Defendant has a documented history of concealment and dishonesty. As Plaintiff points out, the State Court in the parties' divorce case found that during the parties' marriage, Defendant had manipulated the books while running the parties' Restaurant, and had taken other steps, by which Defendant wrongfully converted funds from the Restaurant business and otherwise damaged the business. In the Judgment of Divorce, the State Court adopted the arbitrator's findings, including the findings that while he was managing the Restaurant, Defendant did the following wrongful acts, among many others:

> [Defendant] unlawfully convert[ed] cash sums from the [R]estaurant equivalent to $6,000.00 monthly from June, 2008 through mid November, 2008, totaling $36,000.00. . . . [and] engaged in [a] concerted course of conduct, [which included] removal and/or secreting, and/or destruction of the Banquet Books which were a critical and necessary component to the operation of the Restaurant; . . . [and] failed to record transactions at the [R]estaurant on the POS system; . . . [and] failed to review, monitor, and turn over the financial records of the [R]estaurant to the Plaintiff, MARY ANN HAUK-VALDIVIA.[11]

• At a minimum, the foregoing evidence made it incumbent on Defendant, as part of trying to meet his burden of proof, to respond with testimony and/or other evidence specifically addressing whether, in the years after the 2010 divorce, Defendant has supplemented his income,

---

[11] PX-2, Judgment of Divorce, at 14-15.

and whether he now supplements his disclosed income, with undisclosed construction and/or cement jobs. But Defendant did not do so. In light of this, Defendant's earlier general testimony, denying that he has any income other than the income disclosed in his bankruptcy schedules, is not persuasive, and is insufficient to meet Defendant's burden of proof.

• In addition, and more importantly, even if Defendant has not done such jobs and is not now doing such jobs, the foregoing evidence made it incumbent on Defendant to explain specifically, with testimony and/or other evidence, why he does not have the ability to increase his income, now and over the future years, by doing construction and/or cement jobs, in addition to the part-time job he does for Rental Acosta. But Defendant did not do so.

Based on the foregoing, and the Court's consideration of all the evidence presented, the Court concludes that Defendant failed to meet his burden of proof under *Sorah*, with respect to any amount of the Debt at issue. This is so whether the issue of unreasonableness under *Sorah* is viewed from the time frame of the May 14, 2010 Judgment of Divorce, or the present. And Defendant failed to prove that either now or in the future, he will be unable to pay any or all of the Debt to Plaintiff, from a combination of the following sources: his actual, disclosed income; plus additional income that Defendant has the ability to make; plus liquidation of property that Defendant has or in the future is likely to have.

Given the Defendant's burden of proof, and the evidence presented, the Court must assume that Defendant has the ability to pay his Debt to Plaintiff, from the following resources:

» Defendant's $451.68 per month in disposable income disclosed by his Schedule I and J (= $5,420.16 per year = $54,201.60 over ten years = $81,302.24 over fifteen years);

» Defendant's ability to earn additional income, in an unknown amount, now and in the future, by obtaining additional employment, in addition to his current part-time job

14

working for his father, including possible cement construction jobs;

» Defendant's proceeds from a sale of Defendant's Deering property (unknown amount, but under Plaintiff's valuation this could yield up to $80,000.00, less sale costs, for Defendant's one-half share);[12]

» Defendant's proceeds from a sale of the 2008 Ford Taurus ($2,000.00);

» Defendant's future realization of the value of the Rental Acosta business, in an unknown amount, from either (1) realizing the profit (unknown amount) from operating the business for an unknown number of years; (2) selling the business on a going-concern basis (value unknown); or (3) liquidating the 8-9 pieces of real property owned by the business (value unknown).

For example, if we assume that Rental Acosta owns 9 pieces of unencumbered real estate, and that each is worth only $50,000.00, the equity in those properties that could be tapped by selling or borrowing against the properties would total $450,000.00 — an amount far greater than the amount of Defendant's Debt to Plaintiff.

Because Defendant has the burden of proof, the fact that some of the items listed above are "unknown" works against Defendant; the unknown things highlight that Defendant has not proven his future inability to pay the Debt to Plaintiff.

In considering the Defendant's ability to pay the Debt to Plaintiff in the future, the Court is not limited to any particular, proven time limit. Nor is the Defendant limited to a time limit for paying the entire Debt within the 5-year maximum length that applies to Chapter 13 plans under 11 U.S.C. § 1322(d)(2). If necessary, Defendant could pay the Debt over a longer period of time, without the need for a bankruptcy case. This is especially true in this case, because Defendant really has no need for any bankruptcy relief from his other creditors. As further discussed below,

---

[12] Admittedly, such a sale of the Deering property would eliminate the $225.85 per month in rental income that Defendant's Schedule I says he receives from renting that property. That would reduce his $451.68 per month in disposable income disclosed by his Scheduled I and J, to $225.83 per month ($2,709.96 per year).

15

Defendant filed his bankruptcy case only to try to address Plaintiff's claim against him.

The Court concludes that Defendant failed to meet his burden of proving, by a preponderance of the evidence, that his Debt to Plaintiff is, *to any extent*, "unreasonable in light of the [Defendant D]ebtor's financial circumstances," within the meaning of the *Sorah* case, and that the Debt, *to any extent*, "exceeds what the [Defendant D]ebtor can reasonably be expected to pay," within the meaning of the *Sorah* case.

As a result, the Court must enter judgment for Plaintiff and against Defendant, on Count III of Plaintiff's Complaint and on Defendant's counterclaims. That judgment will determine that (1) Defendant's entire Debt to Plaintiff, in the amount of the March 25, 2019 State Court judgment for $300,000.00 plus any post-judgment interest under applicable Michigan law, is nondischargeable under 11 U.S.C. § 523(a)(5), as a "domestic support obligation;" and (2) that entire Debt is an allowed claim in Defendant's bankruptcy case, entitled to priority under 11 U.S.C. § 507(a)(1).

## C. Count V of Plaintiff's Complaint

In Count V of her Complaint, Plaintiff alleges that Defendant filed his Chapter 13 bankruptcy case, and has prosecuted that case, in bad faith.[13] Plaintiff also argues that the Defendant's current Chapter 13 plan was not proposed in good faith. And Plaintiff alleges in her Complaint that Defendant's signing of the bankruptcy petition "and other pleadings, filings, and papers in this case" was done in violation of Fed. R. Bankr. P. 9011.[14] Plaintiff seeks an award of attorney fees, and dismissal of Defendant's bankruptcy case.

---

[13] *See* Compl. (Docket # 1) at ¶ 62.

[14] *Id.* at ¶ 63.

16

On this count, Plaintiff bears the burden of proof, at least to the extent of all the relief sought by Plaintiff other than a denial of confirmation of Defendant's proposed Chapter 13 plan. Thus, Plaintiff has the burden of proving that Defendant violated Rule 9011 and that Defendant filed his bankruptcy case in bad faith. *See In re McLean Wine Co., Inc.*, 463 B.R. 838, 857 (Bankr. E.D. Mich. 2011) (citations omitted) ("'The burden of proof is on the moving party to prove that Bankruptcy Rule 9011 sanctions are warranted.'"); *Alt v. United States* (*In re Alt*), 305 F.3d 413, 418–20 (6th Cir. 2002) (citations omitted) (explaining that "there is abundant authority for the notion that a bankruptcy court has the power to dismiss a Chapter 13 petition upon a finding that the debtor did not bring it in good faith"; that "[m]ost courts ascribe the basis for such a dismissal to 11 U.S.C. § 1307(c), which—although it does not expressly address good faith—permits a bankruptcy court to dismiss a Chapter 13 petition 'for cause'"; and that "[i]n the context of section 1307(c), the burden of showing the debtor's lack of good faith is borne by the party seeking dismissal").

To the extent Plaintiff seeks denial of confirmation, based on the argument that Defendant's plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3), Defendant has the burden of proving that the plan is proposed in good faith. This is one of the requirements for confirmation of a plan that every Chapter 13 debtor must meet, and the burden is on the Defendant, as plan proponent, to prove that his plan is proposed in good faith. *See Ed Schory & Sons, Inc. v. Francis* (*In re Francis*), 273 B.R. 87, 91 (B.A.P. 6th Cir. 2002), *subsequently aff'd*, 69 F. App'x 766 (6th Cir. 2003) (citing *Hardin v. Caldwell* (*In re Caldwell*), 895 F.2d 1123, 1126 (6th Cir.1990)) ("Pursuant to 11 U.S.C. § 1325(a)(3), a debtor's plan cannot be confirmed unless it is proposed in good faith, and the debtor bears the burden of proving his

good faith."); *see also Hardin v. Caldwell* (*In re Caldwell*), 895 F.2d 1123, 1126 (6th

Cir.1990)(citation omitted) ("The party who seeks a discharge under Chapter 13 bears the burden

of proving good faith."); *In re Hager*, 572 B.R. 848, 851 (Bankr. W.D. Mich. 2017) (citations

omitted) ("At a confirmation hearing, the objecting party has the initial burden to produce

evidence in support of an objection, but a debtor has the ultimate burden of establishing by a

preponderance of the evidence that her chapter 13 plan meets the confirmation requirements

prescribed in § 1325.")

But with respect to the issue of plan confirmation, Plaintiff's objection under § 1325(a)(3)

is moot. The Court's decision today, that Defendant's entire Debt to Plaintiff is a domestic

support obligation, and therefore is entitled to priority under 11 U.S.C. § 507(a)(1), means that

Defendant's currently-proposed plan cannot be confirmed. That is because the plan does not

propose to treat Plaintiff's claim as a priority claim, and does not propose to pay that claim in

full. Such treatment is required under 11 U.S.C. § 1322(a)(2), which requires that a Chapter 13

plan must:

> provide for the full payment, in deferred cash payments, of all
> claims entitled to priority under section 507 of this title, unless the
> holder of a particular claim agrees to a different treatment of such
> claim;

*See also* 11 U.S.C. § 1325(a)(1) (to be confirmed, plan must "comp[y] with the provisions of this

chapter . . . .").

That leaves Plaintiff's claims that Defendant filed and has prosecuted his bankruptcy case

in bad faith, and has violated Rule 9011. In support of these claims, Plaintiff argues that

Defendant has concealed income and property that he was required to disclose in his Schedules.

Plaintiff also argues that Defendant's motivation in filing his Chapter 13 bankruptcy case was improper.

The Court finds that Plaintiff has failed to meet her burden of proving, by a preponderance of the evidence, that Defendant has concealed any income or property, or that Defendant has made any false statements in any of his bankruptcy schedules or statement of financial affairs. Apart from such alleged concealment and alleged false statements, which Plaintiff has not proven, the Court further finds that Plaintiff has not proven bad faith by Defendant, or anything improper, in Defendant's filing or prosecution of his Chapter 13 case.

It is clear that Defendant filed his Chapter 13 bankruptcy case solely in an effort to obtain a discharge of his Debt to Plaintiff. Defendant has hoped to achieve this result by obtaining this Court's determination that the Debt to Plaintiff is *not* a domestic support obligation ("DSO"), in whole or in part, and confirmation of a Chapter 13 plan that treats the Debt as a nonpriority, unsecured debt, in whole or in part.

Defendant's pursuit of those objectives, in both the bankruptcy case and this adversary proceeding, has not been done in bad faith. Even though now, after summary judgment proceedings and a trial, Defendant has lost on the DSO issue, his position that the Debt to Plaintiff is *not* a DSO is certainly more than colorable, and far from frivolous. The Court finds that Defendant has been motivated by a sincere, good faith belief that he has a valid right under the Bankruptcy Code to attempt to treat Plaintiff's claim as a nonpriority, unsecured debt, not a DSO, pay the claim on that basis, in part, in a Chapter 13 plan, and obtain a discharge of it. Defendant has not misused or abused the bankruptcy system.

For these reasons, and considering all the relevant circumstances under the applicable

case law on the subject,[15] the Court finds that Plaintiff has not met her burden of proving that Defendant filed or prosecuted his Chapter 13 case in bad faith.

Nor has Plaintiff proven that Defendant violated Rule 9011 in any respect. Plaintiff has not proven that Defendant filed any paper in his bankruptcy case or this adversary proceeding that was "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" or that any allegations, factual contentions, claims, or defenses stated in any paper filed by Defendant were frivolous or lacking any evidentiary support.[16]

As a result, the Court will enter judgment for Defendant on Count V of Plaintiff's Complaint, and dismiss that count with prejudice.

## IV. Conclusion

For the reasons stated above, the Court will prepare and enter a judgment that is consistent with this Opinion.

**Signed on July 16, 2020**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

[15] *See, e.g., In re Mehlhose*, 469 B.R. 694, 707-08 (Bankr. E.D. Mich. 2012) (citing the case relied on by Plaintiff in her trial brief, *Alt v. United States* (*In re Alt*), 305 F.3d 413, 419 (6th Cir. 2002)); *In re Meehean*, 611 B.R. 574, 587-88 (Bankr. E.D. Mich. 2020) (same).

[16] *See generally In re Gorges*, 590 B.R. 771, 790-91 (Bankr. E.D. Mich. 2018) (discussing Rule 9011 in detail).